UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE D. SMITH, | No. 2:15-cv-1410 DB PS |
| Plaintiff, | |
| v. | ORDER |
| OFFICER JOHN GIOVANNINI, et al., | |
| Defendants. | |

This matter came before the court on December 22, 2017, for the hearing of defendant's motion for summary judgment. Plaintiff is proceeding on an amended complaint that alleges defendant Placer County Sheriff's Officer John Giovannini violated plaintiff's rights under the Fourth Amendment during a July 3, 2013 arrest. Plaintiff Wayne Smith appeared on his own behalf at the December 22, 2017 hearing. Attorney Gregory Warner appeared on behalf of the defendant.[1]  (ECF No. 58.)  After hearing oral argument, defendant's motion was taken under submission.

////

---

[1] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 27.)

1

Having reviewed defendant's motion, the documents filed in support and opposition, and the arguments made at the December 22, 2017 hearing, defendant's motion for summary judgment will be granted with respect to defendant's investigatory stop and use of restraints but denied with respect to plaintiff's arrest, search, and defendant's use of physical force as explained below.

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Defendant's statement of undisputed facts is supported by citation to a declaration provided by defendant Giovannini and to portions of plaintiff's deposition testimony. On July 3, 2013, defendant Giovannini was a Detective Sergeant with the Placer County Sheriff's Office. While in the course and scope of his duty that day, defendant drove his vehicle into a parking lot located at 8258 N. Lake Blvd, Kings Beach, CA, which is known as the "Falcon Lodge." Defendant was wearing a clearly marked Placer County Sheriff's Office raid vest with a badge on his chest. (Def.'s SUDF (ECF No. 44-2) 1-3.[2])

Prior to July 3, 2013, defendant had learned that the Falcon Lodge had been condemned pursuant to Placer County Code. During the prior week, defendant observed "Notice to Vacate" signs posted at the Falcon Lodge pursuant to Placer County Code No. 15.56.140(D).[3] On July 3, 2013, however, defendant observed that the posted Notice to Vacate signs had been removed and replaced with signs advertising parking at the Falcon Lodge for the July 4th holiday events. (Def.'s SUDF (ECF No. 44-2) 4-6.)

When defendant arrived at the Falcon Lodge, plaintiff exited a vehicle and approached the defendant. Plaintiff immediately raised his voice and demanded that defendant leave. Plaintiff further stated that "everything I say can and will be used against me" and that he was recording

---

[2] Citations here are to defendant's specific numbered undisputed fact asserted.

[3] As explained below, defendant has not provided the court with a copy of Placer County Code 15.56.104, or a link to where the court could find this code provision. Based on the court's research, it appears that Placer County Code 15.56.140(A) permits the "director or chief building official" to order a building that is "immediately dangerous" be "vacated within a time certain[.]" Placer County Code 15.56.140(D) requires that the notice to vacate "be posted at or upon each exit of the building" and provide notice that "[i]t is a misdemeanor to occupy" the building. See http://qcode.us/codes/placercounty/view.php?topic=15-15_56-5-15_56_140&frames=off

2

the defendant. Defendant then verbally identified himself, asked plaintiff multiple times to identify himself, and to state plaintiff's purpose for being at the Falcon Lodge. Plaintiff used his right index finger to poke defendant's left forearm four times. Defendant then asked plaintiff if he understood that defendant was a police officer to which he replied, "I know who you are." (Def.'s SUDF (ECF No. 44-2) 7-8.)

Defendant proceeded to drive into the parking lot. Plaintiff raised his voice and stated "don't go in there." Believing that plaintiff was going to physically confront him, defendant called for a patrol car response. Defendant parked his vehicle at the south end of the lot and exited his vehicle as plaintiff approached him. Defendant commanded plaintiff to come to him. Plaintiff responded by changing directions and attempted to walk into the crowd of people at the beach. Defendant then grabbed plaintiff's right arm and escorted him back into the parking lot just as Placer County Sheriff's deputies Robert Griggs and William Meguire arrived on the scene. (Def.'s SUDF (ECF No. 44-2) 9.)

Plaintiff admitted to living in the manager's unit at the Falcon Lodge. While at the Falcon Lodge, defendant saw that the door to the manager's unit was open, the lights were on, and the unit was clearly being lived in. Plaintiff admitted to having a key to the unit attached to his belt. Defendant took the key from plaintiff's belt and used it to lock the manager's unit. (Def.'s SUDF (ECF No. 44-2) 10.)

On July 3, 2013, defendant arrested plaintiff for burglary (Cal. Penal Code § 459) and possession of burglary tools (Cal. Penal Code § 459).[4] Immediately after defendant arrested plaintiff, plaintiff was escorted to Deputy Meguire's vehicle for transport to the Placer County Sheriff's Office command post. Defendant observed Deputy Meguire use care in loading plaintiff into his vehicle including placing his hand on plaintiff's head in order to guide it under the

////

---

[4] According to the allegations found in the amended complaint, these charges were dismissed in January of 2014. (Am. Compl. (ECF No. 8) at 15.) Moreover, although defendant's motion and declaration cite to California Penal Code § 459 with respect to the crime of possession of burglary tools, it seems California Penal Code § 466, "Burglary Instruments or Tools," may be the applicable statute.

3

doorframe. Defendant did not search plaintiff, including his pockets. (Def.'s SUDF (ECF No. 44-2) 11-12, 14.)

PLAINTIFF'S OPPOSITION

Plaintiff's opposition does not comply with Local Rule 260(b). That rule requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial. Although it appears plaintiff has attempted to comply with the rule, plaintiff's opposition fails to comply in a clear manner and is quite difficult to read.

In the absence of the required admissions and denials, the court has reviewed plaintiff's filings in an effort to discern whether plaintiff denies any fact asserted in defendant's statement of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate the existence of a disputed issue of material fact with respect to any of his claims. The court will discuss plaintiff's relevant denials, if any, in analyzing defendant's motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff commenced this action on July 2, 2015, by filing a complaint and a motion to proceed in forma pauperis. (ECF Nos. 1 & 2.) On January 7, 2016, plaintiff's motion to proceed in forma pauperis was granted and plaintiff's complaint was dismissed with leave to amend. (ECF No. 7.) On February 10, 2016, plaintiff filed an amended complaint. (ECF No. 8.)

On April 15, 2016, the previously assigned Magistrate Judge issued an order.[5] (ECF No. 9.) That order explained that, although plaintiff's amended complaint was "quite difficult to read and comprehend," it nonetheless stated "a cognizable claim for violation of the Fourth Amendment as to Officer Giovannini." (Id. at 2-3.[6]) Specifically, the order noted that the amended complaint alleged that on July 3, 2013, defendant Giovannini "physically restrained plaintiff without probable cause," "belly chained and handcuffed plaintiff," and "thrashed

---

[5] This action was reassigned to the undersigned on August 2, 2016. (ECF No. 14.)

[6] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

plaintiff's body around the parking lot while "rifling through plaintiff's pockets." (Id. at 3.) Accordingly, the order permitted service of process on defendant Giovannini. (Id. at 4.)

Defendant filed an answer to the amended complaint on September 28, 2016. (ECF No. 18.) On October 17, 2017, defendant filed the pending motion for summary judgment. (ECF No. 44.) Plaintiff filed an opposition on November 13, 2017.[7] (ECF No. 48.) Defendant filed a reply on December 14, 2017. (ECF No. 57.)

## LEGAL STANDARDS

I.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

---

[7] That same day, plaintiff filed a "motion" to "move on to jury trial, (ECF No. 51), a "motion" related to the computation of damages, (ECF No. 52), and a "motion" relating to a "DISCOVERY BACK UP VERBATIM DISC." (ECF No. 54.) The nature of these motions is unclear and they were not noticed for hearing in compliance with Local Rule 230. Accordingly, these motions are denied without prejudice to renewal.

5

element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be

drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

II.     Qualified Immunity

"Qualified immunity protects government officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'").  When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation.  Pearson, 555 U.S. 236-42.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

7

official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id.; see also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742.) The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201. "In a nutshell, according to the Supreme Court, state officials are entitled to qualified immunity so long as 'none of our precedents 'squarely governs' the facts here,' meaning that 'we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as the officials did.'" Hamby v. Hammond, 821 F.3d 1085, 1091 (9th Cir. 2016) (quoting Mullenix, 136 S. Ct. at 310.)

ANALYSIS

I. Investigatory Stop

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. Defendant's motion for summary judgment argues that "[t]aking the facts in the light most favorable to Plaintiff, the seizure first occurred when Defendant instructed Plaintiff to approach him in the parking lot of the Falcon Lodge." (Def.'s MSJ (ECF No. 44-1) at 4.) Defendant argues that the "pre-arrest seizure of Plaintiff was an investigatory stop based on Defendant's reasonable suspicion that Plaintiff was currently involved in criminal activity." (Id. at 5.)

"'The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" U.S. v. Edwards, 761 F.3d 977, 982 (9th Cir. 2014) (quoting Navarette v. California, 134 S. Ct. 1683, 1687 (2014)). "In order to satisfy the Fourth Amendment's strictures, an investigatory stop by the police may be made only if the officer in question has 'a reasonable

suspicion supported by articulable facts that criminal activity may be afoot[.]'" U.S. v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Here, defendant's statement of undisputed facts establishes the following. Prior to July 3, 2013, defendant knew the Falcon Lodge had been condemned and was supposed to be vacant. (Def.'s SUDF (ECF No. 44-2) 4-5.) Nonetheless, on July 3, 2013, defendant observed signs advertising parking at the Falcon Lodge for a July 4th holiday event. (Def.'s SUDF (ECF No. 44-2) 6.) When defendant arrived at the Falcon Lodge—wearing a Placer County Sheriff's Office raid vest and badge—plaintiff approached the defendant and demanded defendant leave. (Def.'s SUDF (ECF No. 44-2) 3, 7-8.) Defendant asked plaintiff to identify himself multiple times and plaintiff failed to provide defendant that information. (Def.'s SUDF (ECF No. 44-2) 8.) Plaintiff poked defendant's forearm four times. (Id.)

As defendant drove further into the Falcon Lodge parking lot, plaintiff stated "don't go in there." (Id.) After defendant parked and exited the vehicle, plaintiff approached defendant. (Def.'s SUDF (ECF No. 44-2) 9.) As plaintiff was approaching, defendant commanded plaintiff come to defendant. (Id.) Plaintiff then changed directions and attempted to walk into a crowd of people. (Id.) Defendant then grabbed plaintiff's arm and took plaintiff back to the parking lot. (Id.) Plaintiff's opposition fails to dispute any of these asserted facts.

Drawing all reasonable inferences supported by the evidence in plaintiff's favor, defendant has provided evidence that the investigatory stop of plaintiff was based on a reasonable suspicion supported by articulable facts that criminal activity may be afoot. Defendant encountered plaintiff in the parking lot of a condemned building that was supposed to be vacant. See United States v. Smith, 633 F.3d 889, 893 (9th Cir. 2011) (holding that "officers may take into account the context in which suspicious activity occurs in determining whether the circumstances are sufficiently suspicious to warrant further investigation."). Plaintiff initiated the interaction with the defendant, demanded that the defendant leave the area, and poked the defendant. Plaintiff further attempted to dissuade defendant from remaining at the location by telling defendant "don't go in there."

9

Moreover, plaintiff later changed directions when commanded to come to the defendant. See Loharsingh v. City and County of San Francisco, 696 F.Supp.2d 1080, 1097 (N.D. Cal. 2010) ("Evasive behavior, furtive movements, and suspicious eye contact are all relevant factors in evaluating whether the totality of the circumstances supports reasonable suspicion."). Only after all these occurrences, did the defendant initiate an investigatory stop by grabbing plaintiff's arm. See Graham v. Connor, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an . . . investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

Accordingly, defendant's motion for summary judgment is granted as to the amended complaint's claim that defendant's investigatory stop violated plaintiff's rights under the Fourth Amendment.

II.     Unlawful Arrest

Defendant's motion for summary judgment next argues that plaintiff's warrantless arrest did not constitute an unreasonable seizure. (Def.'s MSJ (ECF No. 44-1) at 5.) "[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (quoting Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988)). In this regard, the Supreme Court "has stated 'the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause' to believe that the individual has committed a crime." Bailey v. U.S., 133 S. Ct. 1031, 1037 (2013) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)).

"Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Alternatively, this court has defined probable cause as follows: when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" Id. (citing United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986)) (alteration in original); see also Crowe v. County of San Diego, 608 F.3d 406,

10

432 (9th Cir. 2010) ("In determining whether there was probable cause to arrest, we look to the totality of circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime.").

"'While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" Torres v. City of Los Angeles, 548 F.3d 1197, 1206-07 (9th Cir. 2008) (quoting Lopez, 482 F.3d at 1072). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." Gasho v. United States, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted). "Although 'police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" Crowe, 608 F.3d at 433 (quoting United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005)).

### A. Burglary Related Offenses

Defendant's motion for summary judgment argues:

> As a result of the investigatory stop, Defendant obtained an admission from Plaintiff that Plaintiff was living in the Falcon Lodge, a fact corroborated by Defendant's observation from the open manager's room door that the lights were on, and that Plaintiff had a key that locked the manager's room door. Defendant arrested Plaintiff for burglary and possession of burglary tools.

(Def.'s MSJ (ECF No. 44-1) at 5.)

"The offense of burglary is committed when a person enters a building with the intent to commit a theft or a felony." People v. Sigur, 238 Cal.App.4th 656, 667 (2015) (citing Cal. Penal Code § 459)). However, "'[a] person has a right to be in a structure . . . where the person has expressly or impliedly been invited to enter and does so for a lawful reason.'" People v. Garcia, 17 Cal.App.5th 211, 223 (2017) (quoting People v. Salemme, 2 Cal.App.4th 775, 779 (1992)).

Here, defendant's undisputed facts establish that at the time defendant arrested plaintiff for burglary and possession of burglary tools defendant was that Notice to Vacate signs had been posted at the Falcon Lodge prior to July 3, 2013. (Def.'s SUDF (ECF No. 44-2) 5.) However, prior to the day defendant encountered plaintiff those signs had been removed. (Def.'s SUDF

(ECF No. 44-2) 5.) Defendant does not assert that plaintiff was aware of the Notice to Vacate signs or that plaintiff removed the Notice to Vacate signs.

Plaintiff admitted to living in the manager's unit at the Falcon Lodge. (Def.'s SUDF (ECF No. 44-2) 10.) Plaintiff's occupation of the manager's unit was not surreptitious. Defendant observed that—despite the presence of a crowd of people and a badged law enforcement officer—the door to the manager's unit was open, the lights to the manager's unit were on, and the unit was clearly being lived in. (Id.) Plaintiff also provided defendant with a working key to the manager's unit. (Id.) The key had been attached to plaintiff's belt. (Id.)

Defendant's undisputed facts do not refer to the presence of any tools or instruments commonly associated with burglary such as a crowbar, lock pick, screw driver, bump key, etc. Nor does either defendant's undisputed facts or motion for summary judgment explain why defendant believed that plaintiff entered the Falcon Lodge with the intent to commit a theft or felony. Moreover, it appears that plaintiff's opposition asserts that he was given the key to the Falcon Lodge by its owner, Fred Hodgson.[8] (Pl.'s Opp.'n (ECF No. 48) at 12-13.)

Drawing all reasonable inferences supported by the evidence in plaintiff's favor, the court cannot say that a prudent person would conclude that there was a fair probability that plaintiff had committed a burglary or was in possession of burglary tools. Under the totality of the circumstances known to the defendant, the Court denies summary judgement as to the arrest of plaintiff on suspicion of burglary or possession of burglary tools.

B. <u>Qualified Immunity</u>

Defendant's motion for summary judgment also asserts that defendant is entitled to summary judgment on this claim based on qualified immunity. "In the context of an unlawful

---

[8] A Fred Hodgson appeared as a witness for plaintiff at the December 22, 2017 hearing of defendant's motion for summary judgment, however no testimony was taken at that hearing. Moreover, although defendant has not provided the court with a copy of the police report stemming from plaintiff's arrest, plaintiff has lodged what appears to be a copy of that report with the court. (ECF No. 49.) According to defendant's statement reflected on that report, the "past owner" of the Falcon Lodge, "Fred Hodgson, has been entering the property and allowing others to stay there," and plaintiff told defendant that "Hodgson contracted [plaintiff's] services there as a private investigator and allows [plaintiff] to use the manager's office as a base of operation."

12

arrest . . . the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011). Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812.

Defendant, "has the burden of pleading and proving" that he is entitled to qualified immunity. Frudden v. Pilling, 877 F.3d 821, 831 (9th Cir. 2017) (citing Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)). Despite that burden, the totality of defendant's pleading with respect to this issue is the assertion that "[w]hether or not those two specific crimes [burglary and possession of burglary tools] were actually committed, Defendant is still entitled to qualified immunity as his potential mistake how the penal code may apply to the specific facts is reasonable." (Def.'s MSJ (ECF No. 44-1) at 5.)

Without any further analysis or argument, however, it is unclear to the court how defendant supports the assertion that "his potential mistake [as to] how the penal code may apply to the specific facts is reasonable" based on the facts at issue in this action. As noted above, the court has been provided no information in support of plaintiff's arrest for the possession of burglary tools. Nor has the court been provided with any information as to why defendant believed that plaintiff entered the Falcon Lodge with the intent to commit a theft or a felony. And facts known to the defendant supported the inference that plaintiff may have been at the Falcon Lodge pursuant to the owner's consent.

"[I]f an officer makes an arrest without probable cause, he or she may be entitled to qualified immunity as long as it is reasonably arguable that there was probable cause for the arrest." Reed v. Lieurance, 863 F.3d 1196, 1204-05 (9th Cir. 2017); see also Rosenbaum v. Washoe County, 663 F.3d 1071, 1078 (9th Cir. 2011) ("Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance.").

13

As explained above, the court finds that it is not reasonably arguable based on the facts presented by defendant's motion for summary judgment that there was probable cause for plaintiff's arrest for burglary or the possession of burglary tools. See generally Ortiz-Hernandez, 427 F.3d at 574 ("As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause."); Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003) ("An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause.").

### C. Placer County Code No. 15.56.140

Finally, defendant's motion for summary judgment argues that probable cause existed to arrest plaintiff because defendant "was fully aware of Plaintiff's violation of Placer County Code No. 15.56.140 which states that it is a 'misdemeanor to occupy this [Falcon Lodge] building.'" (Def.'s MSJ (ECF No. 44-1) at 5.) Again, defendant has failed to provide the court with any further argument or analysis with respect to this issue. And defendant's motion does not provide the court with a copy of Placer County Code No. 15.56.140 as an exhibit, or a citation to where the court may find this code, so that the court may evaluate defendant's interpretation of the code provision.

Moreover, "a warrantless misdemeanor arrest must be supported by probable cause to believe that the arrestee has committed a crime." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 924 (9th Cir. 2001) (quotation omitted). It appears from the court's research that Placer County Code No. 15.56.140 does not simply state that it is a "misdemeanor to occupy this building." Here, the language quoted by defendant appears to come from the provision's subsection D, which concerns what must be stated on the Notice to Vacate. Subsection E, however, concerns "Compliance." That provision states, in relevant part:

> No person shall remain in or enter any building . . . which has been so posted, except that the entry may be made to repair, demolish or remove such building, dwelling unit and/or dwelling under a proper permit issued by the director or chief building official. . . . Any person violating this subsection shall be guilty of a misdemeanor.

////

14

As noted above, defendant's undisputed facts establish that when defendant encountered plaintiff the previously posted Notice to Vacate signs were not posted. And that those signs had been replaced with signs inviting the public to attend a holiday event. Defendant does not assert that plaintiff was aware of the posted Notice to Vacate signs on the date of the arrest. Nor did defendant inquire if plaintiff was present to repair, demolish or remove pursuant to a permit issued by the director or chief building official. Moreover, the amended complaint alleges that defendant's arrest report stated that "about an hour" after defendant's interaction with plaintiff defendant "witnessed" the "Owner of Property, Fred Hodgson the Contracted Employer," "entering the Manager's Office," and defendant simply informed Hodgson to "stay off the property."[9] (Am. Compl. (ECF No. 8) at 7.)

Very little information has been provided to the court regarding Placer County Code No. 15.56.140. However, based on what is before the court and drawing all reasonable inferences supported by the evidence in plaintiff's favor, the court cannot say that under the totality of circumstances known to defendant, a prudent person would have concluded that there was a fair probability that plaintiff had violated Placer County Code No. 15.56.140.

Accordingly, defendant's motion for summary judgment is denied as to the amended complaint's unlawful arrest claim.

III.  Excessive Force

　　A.  Restraints

Plaintiff's amended complaint asserts that defendant Giovannini "belly chained (P) and hand cuffed (P) and put shackles, on (P)'s ankles," after plaintiff was arrested. (Am. Compl. (ECF No. 8) at 6.) "It is well-established that overly tight handcuffing can constitute excessive force." Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); see also Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (unreasonably injuring a person's wrists while applying handcuffs constitutes use of excessive force). Plaintiff here, however, is not alleging that his

---

[9] See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (explaining that, where the plaintiff is pro se, the court must consider as evidence on summary judgment contents of a verified pleading that are based on personal knowledge).

restraints were overly tight or caused injury.  It does not appear that plaintiff complained about the use of restraints to the defendant.

Although plaintiff may believe the restraints were excessive, prior to the use of restraints, plaintiff failed to provide the defendant with his identity, had poked the defendant, attempted to evade the defendant, and had been placed under arrest.  Under such circumstances, the court cannot say that the defendant's use of force could be considered excessive.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("Because Arpin failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable or that she sustained actual injuries, the district court did not err in granting summary judgment to the County Defendants on Arpin's claim of unreasonable force."); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) ("Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."); Powell v. Beverly Hills Police Dept., No CV 06-5082 RGK (FFM), 2008 WL 4821001, at *5 (C.D. Cal. Oct. 30, 2008) (granting judgment on the pleadings "because plaintiff has not submitted any facts suggesting that he suffered injury as a result of the handcuffing").

Accordingly, defendant's motion for summary judgment is granted with respect to the amended complaint's claim that plaintiff being belly chained, handcuffed, and shackled constituted excessive force.

B. Physical Force

Plaintiff's amended complaint alleges that the defendant "thrashed" plaintiff "around the parking lot," and "threw" plaintiff into a police vehicle.  (Am. Compl. (ECF No. 44-1) at 6-7.)  A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors.'"  Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)).  Force is excessive when it is greater than is reasonable under the circumstances."  Santos v. Gates, 287

F.3d 846, 854 (9th Cir. 2002) (citing Graham, 490 U.S. 386).

As defendant's motion for summary judgment acknowledges, "[w]hile Defendant denies that he escorted Plaintiff to the sheriff's vehicle, Defendant acknowledges that the Court must accept that fact as alleged by Plaintiff for the purposes of this Motion." (Def.'s MSJ (ECF No. 44-1) at 7.) Defendant asserts that plaintiff's deposition testimony establishes that the "the Defendant did not throw Plaintiff, but guided him by the shoulder into the vehicle." (Id.) Defendant argues:

> When asked to describe how Defendant touched him, Plaintiff responded that Defendant put handcuffs, ankle cuffs, and the belly-chain on him and then "threw me in the squad car." When pressed to more specifically explain what he meant by "threw me in the squad car," Plaintiff continued to colorfully describe the incident in an analogy, "No different that throwing a basketball." Finally, Plaintiff described the factual scenario in detail as opposed to conclusory terms, "Well, I was belly chained and ankle chained. His hands were initially pulling my right shoulder and thrashing me about and throwing me into the squad car at leftward angle, as I recall, and making sure my head didn't hit the door as is customary with any police office." Plaintiff's recounting of the physical placement of Defendant's hands and actions does not support Plaintiff's exaggerated general description of the actual events. It is physically impossible for Defendant to "throw" Plaintiff like a basketball, while at the same time using the care to use his hand to guide the person's head under the doorframe.

(Def.'s MSJ (ECF No. 44-1) at 7.)

It is true that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). However, the court disagrees with defendant's assertion that it is "physically impossible" for defendant to guide plaintiff's head under the doorframe, while also "throw[ing] Plaintiff like a basketball[.]" (Def.'s MSJ (ECF No. 44-1) at 7.)

It seems at a minimum, one reasonable interpretation of plaintiff's testimony is that the defendant pushed down on plaintiff's head to ensure that plaintiff's head did not strike the vehicle's door frame. However, while pushing down on plaintiff's head, defendant also pushed, or shoved, plaintiff with force into the vehicle. Moreover, defendant's argument fails to address plaintiff's assertion that the defendant was "thrashing [plaintiff] about[.]" (Id.) And plaintiff's

17

opposition continues to assert that the defendant "threw [plaintiff] into the Vehicle[.]" (Pl.'s Opp.'n (ECF No. 48) at 11.)

The Ninth Circuit has "'held on many occasions'" that "'[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011) (alterations omitted) (quoiting Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc)); see also C.V. by and through Villegas v. City of Anaheim, 823 F.3d 1252, 1255 (9th Cir. 2016) ("[S]ummary judgment should be granted sparingly in excessive force cases.").

Here, there is a genuine dispute of material fact with respect to defendant's use of physical force. See LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir. 2000) (reversing grant of judgment as a matter of law because "a jury could conclude that Horton used force in excess of what was reasonable"). Accordingly, defendant's motion for summary judgment is denied as to the amended complaint's excessive force claim concerning defendant's use of physical force.

IV. Unlawful Search

The amended complaint alleges that the defendant rifled through plaintiff's pockets. (Am. Compl. (ECF No. 8) at 6.) Defendant's motion for summary judgment presents two arguments in support of granting defendant summary judgment with respect to this claim.

First, defendant's motion argues that "when questioned regarding the full extent of his physical interaction with Defendant, [plaintiff] did not testify that Defendant searched Plaintiff's pockets." (Def.'s MSJ (ECF No. 44-1) at 8.) In support of this argument, defendant cites plaintiff's deposition where plaintiff was asked by defendant's counsel if "[o]ther that (sic) what you've already described . . . did you have any other physical contact of any nature with Detective Giovannini" on the date of incident. (Id.) Plaintiff answered that "[w]e've discussed that in full, yeah, no." (Id.) Pressed if there was anything else, plaintiff answered "[n]ot to my knowledge." (Id.)

////

////

Defense counsel's question, however, was somewhat ambiguous and failed to directly ask plaintiff if defendant searched plaintiff's pockets.[10] Although defendant's interpretation of plaintiff's response to the question is a reasonable one, another reasonable interpretation is that plaintiff believed defense counsel's question regarding physical contact concerned plaintiff's excessive use of force allegations, not the act of searching plaintiff's pocket. And plaintiff's opposition to defendant's motion for summary judgment reiterates that plaintiff was "seized by the defendant" and his "Pockets were searched[.]" (Pl.'s Opp.'n (ECF No. 48) at 3.) In this regard, due to the ambiguity of defense counsel's question, this is not a situation in which plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it[.]" Scott, 550 U.S. at 380.

Second, defendant argues that defendant is entitled to qualified immunity from this claim because the search was incident to a lawful arrest. (Def.'s MSJ (ECF No. 44-1) at 8-9.) However, above the court found that plaintiff's arrest, at least for purposes of defendant's motion for summary judgment, was not lawful. And "a search incident to an unlawful arrest is itself always unlawful[.]" U.S. v. Nora, 765 F.3d 1049, 1056 (9th Cir. 2014); see also U.S. v. Mota, 982 F.2d 1384, 1389 (9th Cir. 1993) ("Since the custodial arrest of appellants was invalid, the search should not have been exempted from the warrant requirement of the Fourth Amendment as a search incident to lawful arrest.").

Accordingly, defendant's motion for summary judgment is denied with respect to the amended complaint's unlawful search claim.

CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant's October 17, 2017 motion for summary judgment (ECF No. 44) is granted in part and denied in part;

////

---

[10] Defendant provided a complete copy of plaintiff's entire deposition to the court for review. The court has reviewed the deposition. It does not appear that plaintiff was explicitly asked if the defendant searched plaintiff's pocket.

19

2. Defendant's motion for summary judgment is granted as to the amended complaint's claims concerning unlawful seizure as a result of an investigatory stop and excessive force as a result of the use of handcuffs, belly chain, and shackles;

3. Defendant's motion for summary judgment is denied as to the amended complaint's claims of unlawful arrest, unlawful use of physical force, and unlawful search;

4. Plaintiff's November 13, 2017 motion for a jury trial (ECF No. 51) is denied without prejudice;

5. Plaintiff's November 13, 2017 motion to show cause (ECF No. 52) is denied without prejudice;

6. Plaintiff's November 13, 2017 motion for discovery (ECF No. 54) is denied without prejudice; and

7. Within 21 days of the date of this order each party shall file a status report addressing whether this matter should be set for a settlement conference or proceed directly to a final pretrial conference. Each party's status report shall address whether the party will stipulate to the undersigned acting as the settlement judge, waiving any disqualification by virtue of her so acting, or whether they prefer to have a settlement conference before another magistrate judge.

Dated: August 23, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.consent\smith1410.msj.ord